# EXHIBIT 1

*1056511971*

DISTRICT COURT
FILED
SEP 22 2023
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

IN THE TULSA COUNTY DISTRICT COURT
STATE OF OKLAHOMA

| | | |
|---|---|---|
| (1) JOSEPH METZGER, | ) | |
| Plaintiff | ) | Hon. Judge CJ-2023-03396 |
| v. | ) | Attorney Lien Claimed<br>Jury Trial Demanded |
| (1) ADESA OKLAHOMA, LLC,<br>a domestic limited liability company, | ) | |
| Defendant. | ) | TRACY L. PRIDDY |

**PETITION**

COMES NOW, the Plaintiff, Joseph Metzger ("Plaintiff"), by and through their counsel of record, and for their cause of action against the Defendant, ADESA Oklahoma, LLC ("ADESA" or "Defendant"), states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a resident of Rogers County, Oklahoma.

2. Defendant is a domestic limited liability company, doing substantial business in Tulsa County, Oklahoma

3. The injuries that are the subject of this dispute occurred in Tulsa County, Oklahoma.

4. Plaintiff filed a Charge of Discrimination with the EEOC, properly exhausting his administrative remedies. Plaintiff Notice of Right to Sue from the EEOC June 27, 2023, and filed this lawsuit within ninety-days from receipt of said notices.

5. This Court has jurisdiction and venue is proper in Tulsa County.

6. Plaintiffs bring this action for damages under the Oklahoma Anti-Discrimination Act ("OADA") Okla. Stat. tit. 25, §§ 1101 et. seq. providing relief against discrimination in employment on the basis of race.

7. Plaintiffs bring this action for damages under Title VII of the Civil Rights Act of 1964, as amended by 42 U.S. C. §2000e et seq. ("Title VII"), and 42 U.S.C. 1981, providing relief against discrimination in employment, and discharge on the basis of race.

8. Compensatory damages are sought pursuant to OADA, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981(b).

9. Punitive damages are sought pursuant to 42 U.S.C. § 1981.

10. Costs and attorney's fees may be awarded pursuant to OADA and 42 U.S.C. § 2000e, *et seq.*

## FACTUAL ALLEGATIONS

11. Plaintiffs incorporate the preceding paragraphs as if realleged.

12. Plaintiff began working for Defendant ADESA location in Tulsa, Oklahoma, in 2006 as a Mechanic.

13. Plaintiff performed the required duties of a mechanic more than adequately for twelve (12) years. Upon information and belief, Plaintiff kept the mechanic shop running profitably.

14. In 2014, a promotional position of Conditional Report Supervisor became available in which Plaintiff applied for.

15. The position was given, a day after posting, to Mong Lee ("Lee"), a Condition Report writer who had only worked at Defendant company for less than a year, at the time.

16. Plaintiff was not even granted a chance to interview for the sought-after position.

17. A month later, Plaintiff was offered higher salary supervisor position at a competitor company, but the general manager, Mike Deforest ("Deforest") of ADESA Tulsa offered Plaintiff a raise if he would agree to stay with the company. Plaintiff accepted the raise.

18. In May 2016, Plaintiff took on more managerial duties as the new manager, Herb Guimond ("Herb"), did not have enough time to handle the supervising duties of the mechanic shop.

19. Throughout the next three (3) years, Plaintiff continued to take on more managerial tasks. In 2019, Plaintiff was moved from the outdoor shop duties to the indoor position of posting work, part orders, and PSI records. While Plaintiff still sent his reports to Herb, the duties he was responsible for were that of a supervising employee, making him an untitled supervisor.

20. In November 2020, Herb was fired from ADESA for having sexual relations with an employee on his staff. Herb's previous managerial duties were absorbed by Plaintiff. The tasks, in addition to his other tasks, included handing out more work, posting, ordering, shop safety compliance, repairs, and inventory. Plaintiff had become the unofficial Reconditioning Manager of the mechanic, body, and detail shops of Defendant's company.

21. In January 2021, Lee was promoted to Operations Manager of ADESA Tulsa, a position that had not existed after the creation of the Reconditioning Manager position. It became clear that this position was only reinstated to install Lee, without the need for application collection and internal job postings.

22. In February 2021, the Reconditioning Manager position was posted by Defendant, available for Plaintiff's application. Plaintiff was finally interviewed for the position by Deforest and Lee. They explained to Plaintiff that he could fill the position as long as he is "not the old Joe," and that, "[he] needed to be calm and have a passionate attitude." These criteria came as a shock

to Plaintiff as he did not know what the Defendant employees meant to define. Plaintiff was never offered an explanation to those criteria.

23. Plaintiff was informally offered the position but told it would require further training. However, any time Plaintiff would reach out to Lee or Deforest for the supposed training, or when he asked what they meant by "old Joe," he was ignored on every occasion. Plaintiff never received the 'required' training from any Defendant employee.

24. In weekly meetings, Deforest would brag about how Plaintiff "turned the shops around," making them more profitable. Plaintiff was able to attain this profitability without the help of his immediate supervisors, Lee and Deforest.

25. Lee repeatedly talked down on Plaintiff in front of employees and managers.

26. When Plaintiff requested guidance from Lee, he was told to "figure it out."

27. Despite the lack of guidance from his immediate supervisor, Plaintiff's operations proceeded with exceptional quality, especially on the days in which Lee was out on vacation.

28. Lee's transportation crew went to Plaintiff, daily, seeking printouts of cars to move, because Lee was "nowhere to be found." Even with Lee in a higher-ranking position, Plaintiff was still undertaking his duties.

29. With a lack of authority structure, Plaintiff began to communicate with Deforest, instead of Lee as Plaintiff and Lee's communication had been intermittent, at best.

30. In January of 2022, Deforest began tasking Plaintiff with more jobs, such as calling for roof repairs and doing more arbitration. When handed these tasks, Deforest would say, "I need this done and I cannot rely on Mong."

31. When Defendant lost a major account, Car-Mart, which sourced cars for the body and mechanic shop, shop numbers declined. Plaintiff took the initiative to add a few independent

accounts. Deforest was pleased with Plaintiff's idea. However, Lee's lack of initiative led to the dissolution of these plans and future accounts.

32. In April 2022, Deforest left Defendant company, leaving an open GM position. Plaintiff, with almost seventeen (17) years of experience with the company, applied for the position.

33. The hiring official, a retired GM, expressed pleasure in the fact that Plaintiff had been with the company for so long. In the interview, the official said, "that is all I need to hear," when Plaintiff informed him of his length of employment with ADESA.

34. Since Plaintiff's promotion seemed more promising than Lee's, tensions grew between the parties. Almost all communication had ceased, despite Plaintiff's repeated efforts to communicate.

35. Plaintiff asked Lee, on several occasions, to order fans for his outdoor crew, since temperatures were on the rise. Lee would always reply, "I'll get those later," when he knew the of the harsh working conditions.

36. Lee repeatedly failed to follow the rules that all cars are to be finished and ready for the sale lanes on Wednesdays.

37. Lee would often go to the shops and speak badly about Plaintiff to other employees.

38. In June 2022, Lee was involved in an investigation of another sexual misconduct case with one of Plaintiff's employees.

39. The investigation was led by the Defendant's Human Resources department ("HR"). While Plaintiff had extensive knowledge on the sexual misconduct, he was never asked for an interview by HR.

40. Instead, HR questioned Plaintiff if he had ever heard an employee use the words, "Jamal rigging," or if he condoned any racist behavior.

41. Plaintiff responded, honestly, that he had not heard that phrase and he does not condone racism of any sort. Plaintiff informed HR that he would be looking into the matter, as he is not a racist and will not stand for racist comments in his shop.

42. On June 30th, 2022, Plaintiff received a phone call from Lee, asking him to report to the GM's office for a meeting. There, with Brandon Clay and Lee in-person and Cassandra Gilbert present via Zoom, Lee informed Plaintiff that this would be his "last day with the company for being racist."

43. As Plaintiff exited, Brandon Clay stated, "Man I have no idea where this is coming from, I know you aren't racist."

44. Plaintiff was over the age 40 at the time of his termination.

**<u>FIRST CLAIM FOR RELIEF</u>**

**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

45. Plaintiffs incorporate the preceding paragraphs as if realleged.

46. Plaintiff was terminated with no prior warnings, discipline, nor performance issues. The only thing that changed for Plaintiffs over years of employment was the promotion of Lee as Plaintiff's direct supervisor.

47. Defendant did nothing to ensure Plaintiff was managed in a non-discriminatory fashion by Lee.

48. By terminating Plaintiff, on Lee's persuasion, simply for his race, Defendant has violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits;

b. Front pay until normal retirement;

b. Compensatory damages for mental anguish, pain and suffering and other non-pecuniary losses;

c. Their attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## SECOND CLAIM FOR RELIEF
## RACE DISCRIMINATION IN VIOLATION OF THE OADA

49. Plaintiff incorporates as if re-alleged all preceding paragraphs.

50. By treating Plaintiff differently than his non-white coworkers, most importantly Lee, with respect to discipline, working conditions, job performance, promotion, and termination, the Defendant has violated the Oklahoma Anti-Discrimination Act.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits;

b. Front pay until normal retirement;

b. Compensatory damages for mental anguish, pain and suffering and other non-pecuniary losses;

c. Their attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## THIRD CLAIM FOR RELIEF
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA
## (29 U.S.C. 621 *ET SEQ.*)

51. Plaintiff incorporates as if re-alleged all preceding paragraphs.

52. The foregoing conduct violates the ADEA of 1967 as amended, 29 U.S.C. § 621 *et seq*.

53. Plaintiff experienced age discrimination by way of discriminatory discipline and his termination of employment in violation of the ADEA.

54. Defendant's discriminatory practices have resulted in the loss of past and future wages and other job benefits, and have caused the Plaintiff to suffer humiliation, embarrassment, and emotional distress.

55. Defendant committed the act alleged with malice or reckless indifference to the protected rights of the Plaintiff. Plaintiff is thus entitled to recover punitive damages in an amount to be determined by a jury.

56. Upon information and belief, Plaintiff's termination was motivated in substantial part by his age, in violation of the ADEA.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement;
b. Liquidated damages for his mental anguish, pain and suffering, and other non-pecuniary losses;
c. Punitive damages for the intentional and knowing acts of discrimination committed by Defendant;
d. Plaintiff's attorney fees and the costs and expenses of this action;
e. Such other relief as the Court deems just and equitable.

**WHEREFORE**, based on the foregoing, Plaintiff prays that this Court grant the relief sought, including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the time of filing suit, punitive damages in excess of

Seventy-Five Thousand Dollars ($75,000.00), the costs of bringing this action, a reasonable attorney's fee, along with such other relief as deemed just and equitable.

Respectfully submitted,

Daniel E. Smolen, OBA #19943
Smolen & Roytman, PLLC
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
danielsmolen@ssrok.com

Mark A. Smith, OBA No. 31231
CARUSO & SMITH, PLLC
2021 South Lewis Ave, Suite 720
Tulsa, OK 74104
(918) 583-5900 (Office)
(918) 583-5902 (Fax)
mark.smith@smithlegalok.com

*Attorneys for Plaintiff*